[Civ. No. 5985. First Appellate District, Division One.—September 21, 1927.]

DONALD L. MARSHALL, Petitioner, v. HARRY G. WILLIAMS, as City Auditor of the City of Oakland, Respondent.

Raymond Benjamin and M. C. Chapman for Petitioner.

Preston Higgins, City Attorney, and C. Stanley Wood, and John W. Collier, Deputy City Attorneys, for Respondent.

Snook & Snook & Chase, *Amici Curiae*.

TYLER, P. J.—Application for writ of mandate prayed to be directed to the Auditor of the City of Oakland to approve a salary demand. Upon the filing of the petition an alternative writ issued from this court commanding respondent to allow said demand or show cause to the contrary. In response thereto he has appeared and demurred to the petition. The facts and legal contentions in reference thereto are as follows: The City of Oakland is a municipal corporation existing under and by virtue of a freeholders' charter duly enacted by the people of said city and approved

by the legislature of the state of California. Respondent Harry G. Williams is its duly elected, qualified, and acting city auditor. On the eleventh day of July, 1927, at a regular meeting of the council of said city, petitioner, Donald L. Marshall, was appointed chief of police by the commissioner of public health and safety, which appointment was, on said day, duly and regularly confirmed by the unanimous vote of the council. At the time of his appointment and confirmation as chief of police petitioner was a citizen of the United States, of the age of thirty-seven years, and it is alleged that he possessed all the qualifications required by law and said charter to render him eligible for said office. Immediately after his appointment Marshall qualified as chief of police by subscribing to the prescribed oath and filing the same with the city clerk. On the twenty-ninth day of July the council of the city considered and approved his demand for salary on the treasurer in the sum of $304.84, which demand was drawn on the proper fund in favor of petitioner, the amount thereof representing the sum he was entitled to from the date of his appointment to and including the 31st of July, 1927. The demand as approved was thereupon presented to respondent, as Auditor, for his allowance as prescribed by the charter, but was rejected by him upon the ground that, in his opinion, petitioner was ineligible to the office to which he was appointed for the reason that he had passed the age requirement provided for in the charter for members of the police department and had never passed a civil service examination, for which reasons his appointment was without authority. Accordingly, it is here claimed by respondent that the chief of police is a member of the Oakland police department and in common with other members of such department must have passed a satisfactory civil service examination before his appointment, unless he was previously a member of the department, and that to become such a member he must have, at the time of his appointment, been not more than thirty-five years of age. It is admitted that petitioner was not a member of the department before his appointment and that he was over thirty-five years of age at that time and had never passed a civil service examination to become such a member. It is petitioner's claim that the civil service requirements for members of the police department do not apply to the office

of chief of police, as such office is specially excluded from the operation of the charter provisions. It is apparent that the solution of the question depends upon the proper construction to be given to the various charter provisions relating to the subject. Article XIV, section 87, of that instrument provides in substance that the police department shall consist of a chief of police, captain of inspectors, who shall act as chief of police in the absence of the chief, and such captains, inspectors, sergeants, corporals, and bailiffs as in the judgment of the council the needs of the service may require. Section 88 provides that no person shall become a member of the department unless he shall be a citizen of the United States, a resident of the city of Oakland for a stated period, and be not less than twenty-five nor more than thirty-five years of age, and before his appointment pass a satisfactory examination under such rules and regulations as may be prescribed by the civil service board. Section 89 provides, among other things, that the chief of police, captains of inspectors, sergeants, corporals, bailiffs, patrolmen, and all other officers and members shall be appointed by the commissioner of public health and safety, subject to the civil service provisions of the charter, and the appointment of the chief of police shall be subject to confirmation by the council. The civil service requirements referred to in the foregoing provisions are found in article XIII of the charter. Section 80 of that article declares that its provisions shall apply to all appointed officers and employees of the city in and under any of the departments enumerated in section 72 of the charter, except the chief officials of the city enumerated in article VII, section 30, of that instrument. Section 30 defines the chief officials to be the city attorney, treasurer, who shall be *ex-officio* tax collector, city clerk, city engineer, chief of police, chief of fire department, street superintendent, health officer, and superintendent of electrical department. This section further provides that the counsel shall by ordinance prescribe the duties of all the chief officials, and may, by an affirmative vote of four members, consolidate and place in charge of one such chief official the functions and duties of two or more such chief officials. The council is also given the power under the section to remove from office any of the chief officials of the city. The qualifications of certain of the chief officials

are also there prescribed, but there are none with reference to the chief of police, who, together with the chief of the fire department and health officer, are appointed by the commissioner of health and safety, subject to confirmation by the council, and they are assigned to that department. In addition to these chief officials, article XIII, section 80, further exempts from the civil service provisions, "the Building Inspector; the City Wharfinger; License Inspector; Bacteriologist; City Chemist; Sanitary Inspector; the Market and Food Inspector; the Plumbing Inspector; Mayor's Secretary; Assistant City Attorneys; the members of the Board of Library Directors, Board of Play Ground Directors and Board of Park Directors," and certain other persons not necessary to here enumerate.

It will be noticed that while the provisions of the charter relating to the organization of the police department declare it shall consist of a chief of police and certain other officers (art. XIV, sec. 87, *supra*), and that no person shall become a member of the department unless he shall have passed a civil service examination, and be not less than twenty-five nor more than thirty-five years of age (art. XIV, sec. 88), the civil service provisions expressly exempt the chief of police and certain other officers from the operation thereof (art. XIII, sec. 80, *supra*). It is this seeming conflict that we are asked to interpret.

■ The different sections or provisions of an act should be so construed as to harmonize and give effect to each. The propriety and necessity of so construing them are imperative when the purpose is to harmonize one part of an act with another in accord with its general intent. ■ It is the duty of courts in construing statutes to give effect to the intent of the framers of the instrument and seek for that intent in every legitimate way. ■ The statute itself furnishes the best means of its own exposition; and if its provisions are clear the intention of the law-making power thus indicated will prevail. ■ When a general intention is expressed in an act and also a particular intention incompatible with the general intention, the particular intention is to be considered in the nature of an exception and both are to have effect in their respective spheres. ■ A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent.

Consequently, each part of a section should be construed in connection with every other part or section and so as to produce a harmonious whole. So construed, we are of the opinion that it was the intention of the framers of the charter to exempt the office of chief of police from any and all of the civil service provisions thereof. Any other construction would result in the entire emasculation of the civil service provisions which expressly exempt the officers there enumerated from their operation. The provisions exempting these officers are clear and unambiguous and mean just what they declare or they mean nothing. That this is so there can be no question. A civil service employee acquires his standing through the possession of certain qualifications, and the passing of an examination, and his removal is subject to a hearing which is provided for (art. XIII, sec. 82). The chief of police, on the contrary, is expressly declared to be one of the chief officials of the city, as they are called, and these officers, together with others, are by express civil service provisions exempt from any civil service requirements. In both appointment and removal, therefore, the chief of police is distinguished from other members of the department. Some of the officials must possess certain prescribed qualifications to hold their office, but none are expressly imposed by the charter under its civil service provisions for the office of chief of police. The only qualifications he is required to possess, therefore, are such which the general law imposes upon persons holding public office. He is appointed in a manner different from all other members of the police department. They are appointed under civil service provisions and their tenure of office is of a permanent character. His appointment, on the contrary, is made by the commissioner of public health and safety and his removal is not subject to civil service provisions, the city council having the power by the affirmative vote of three of its members to retire him from office with or without cause. ■ Then again, by article VII, section 30, the council may, at any time, through four of its members, consolidate and place in charge of one chief official the functions and duties of two or more such chief officials. By virtue of this provision any chief official, irrespective of his age or other civil service requirement, is eligible to the office of chief of police. This provision indicates not only that the

chief of police may be selected from out the police department, but also that it never was intended that the civil service restrictions should control in the manner and mode of his appointment. The matter is one that is left entirely to the sound discretion of the appointing power. When appointed, the chief of police is assigned to the department of public health and safety of which the police department is a part. In a broad sense he thus becomes a member of the police department, but he is not such a member as is contemplated in the general provisions relating to the organization of that department which require all members to possess the qualifications that it is here claimed the chief of police should possess. ▮ Sections 87, 88, and 89 of article XIV, which prescribe these qualifications, are limited and controlled by the express civil service provisions contained in article XIII of the charter hereinabove recited, which specially relate to the office in question, and which provisions, as we have pointed out, are incompatible with respondent's contention as they expressly negative any such purpose. We do not consider further discussion to be necessary.

▮ To our minds the civil service provisions are plainly expressed and the intent of the framers of the charter is clear and there is little or no room for interpretation. Under these circumstances courts have no power to ignore express provisions of an act and by any forced or unreasonable construction defeat the clearly expressed intention of the law-making power. ▮ We conclude, therefore, that the general provisions of the charter relating to the organization of the police department apply to the permanent members of that department only, and do not, and were never intended to, apply to the office of chief of police, who acquires his office contrary to those provisions and the tenure of which is in no manner controlled thereby, but may be terminated in a manner not countenanced by civil service requirements. ▮ For the reasons given petitioner is entitled to and it is hereby ordered that a writ of mandate issue directing respondent as Auditor of the City of Oakland to allow said demand so approved by the council in favor of petitioner.

Cashin, J., and Knight, J., concurred.