[Crim. No. 4528. In Bank. Aug. 31, 1944.]

THE PEOPLE, Respondent, v. AMOS FRANKLIN CLAPP, et al., Appellants.

A. H. McConnell and Archie G. Cope for Appellant.

Robert W. Kenny, Attorney General, T. G. Negrich and Frank Richards, Deputies Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

TRAYNOR, J.—Defendants appeal from judgments convicting them of the crime of abortion and from an order denying their motions for a new trial. Their convictions were based on the testimony of Thelma Huntley, who underwent the illegal operation, and of Alice Huntley and Alice Thurman, her mother-in-law and sister-in-law, who were present during the operation, which took place in Thelma Huntley's home.

Defendants attack the judgments on the ground that the evidence was insufficient to support the convictions. They claim that all three witnesses were accomplices and that their testimony therefore needed corroboration under section 1111 of the Penal Code, which provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission

of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

The court instructed the jury that the testimony of one accomplice is not corroborated by that of another. (*People* v. *Creegan,* 121 Cal. 554 [53 P. 1082]; *People* v. *Sternberg,* 111 Cal. 3 [43 P. 198]; *People* v. *Bunkers,* 2 Cal.App. 197 [84 P. 364, 370]; see 8 Cal.Jur. 180.) The question whether the two women present at the operation were accomplices of defendants was left to the jury. The court instructed the jury that Thelma Huntley's testimony needed corroboration under section 1108 of the Penal Code, which provides that upon a trial for abortion the testimony of the woman who underwent the operation must be corroborated. The court refused, however, to instruct the jury that Thelma Huntley's testimony needed corroboration by evidence from a source other than an accomplice. Since the court did not impose that condition, the jury was in effect instructed that the testimony of an accomplice was acceptable as corroboration of Thelma Huntley's testimony. It was therefore free to base its verdict of guilty on the testimony of the three women, even if it regarded Thelma Huntley's mother-in-law and sister-in-law as accomplices, provided that Thelma Huntley was not herself an accomplice. The court's refusal to instruct the jury that Thelma Huntley's testimony needed corroboration by evidence other than testimony of an accomplice can therefore be approved only if she was not an accomplice.

The question whether a woman who submits to an illegal operation is an accomplice of the defendant on trial for the abortion must be determined according to the definition of an accomplice in section 1111 of the Penal Code as one ''who is liable to prosecution for the identical offense charged against the defendant on trial.'' This definition was written into the law by the Legislature in 1915 (Stats. 1915, p. 760) after this court, in construing section 1111, which formerly did not include a definition of an accomplice, held that accomplices are persons who participate in the commission of a crime, either by committing the act directly, aiding in its commission, or advising and encouraging its commission. (*People* v. *Coffey,* 161 Cal. 433, 439 [119 P. 901, 39 L.R.A. N.S. 704].) Under

this construction of the section one who cooperated in any manner with the defendant in committing the crime was an accomplice, whether or not the act of the accomplice was a separate offense. This court stated, therefore, that one is an accomplice in the sense of section 1111 "because of what he had done and not because of the form of punishment which the law may mete out for his acts," and that "Wherever the law has denounced as a separate crime the particular act of participation by an accessory or accomplice, the sole logical and legal effect is not to destroy the relationship of accomplice, but merely to effect a modification of section 31. . . ." (*People* v. *Coffey, supra,* p. 443.) Accordingly, a woman was an accomplice if she submitted to an abortion knowingly and cooperated with the person who performed it (*People* v. *Coffey, supra,* p. 446), although then as now her cooperation made her punishable for the separate offense specified in section 275 of the Penal Code.

In view of this construction of section 1111 as it was formerly worded, the Legislature added the definition of an accomplice to the section, repudiating the definition established under the former law. ■ Under the statutory definition, the mere fact that the witness is punishable for his cooperation with the defendant in the illegal transaction does not make him an accomplice. It is necessary to determine whether sections 31 and 971 of the Penal Code or other provisions of the criminal law subject the witness to prosecution under the provisions that the defendant is accused of violating, or whether the acts of the witness participating in the transaction constitute a separate and distinct offense. ■ If a statutory provision so defines a crime that the participation of two or more persons is necessary for its commission, but prescribes punishment for the acts of certain participants only, and another statutory provision prescribes punishment for the acts of participants not subject to the first provision, it is clear that the latter are criminally liable only under the specific provision relating to their participation in the criminal transaction. The specific provision making the acts of participation in the transaction a separate offense supersedes the general provision in section 31 of the Penal Code that such acts subject the participant in the crime of the accused to prosecution for its commission. (Cal. Code Civ. Proc., § 1859; *Carpenter* v. *Coast Surety Corp.,* 25 Cal.App.

2d 209, 212 [77 P.2d 294]; *Imperial County* v. *Garey,* 61 Cal.App. 439, 444 [215 P. 89]; *Marshall* v. *Williams,* 85 Cal. App. 507, 511 [259 P. 970]; *Merchants Nat. Bank* v. *Continental Nat. Bank,* 98 Cal.App. 523, 533 [277 P. 354]; *Talcott* v. *Harbor Commissioners,* 53 Cal. 199.) ▮ Thus section 275 of the Penal Code prescribing punishment for a woman who submits to an illegal operation precludes the application of section 31 of the Penal Code under which she would be punishable as principal for the crime of abortion. As the court stated in *People* v. *Vedder,* 98 N.Y. 630, 631: ''The statute plainly contemplates two persons as cooperating in the commission of the crime, the one being the guilty person against whom the penalties of the statute are directed, and the other, the subject upon whose body the crime is committed. It then proceeds to define the respective crimes committed by the respective persons participating in the act, and pronounces different penalties for the respective offenses. It is quite clear that the woman spoken of in the statute is not regarded as one of the persons who could be guilty of the crime described in the 294th section (abortion), and that she could not therefore be indicted under that section.'' (See, also, *People* v. *Blank,* 283 N.Y. 526 [29 N.E.2d 73]; *Dunn* v. *People,* 29 N.Y. 523 [86 Am.Dec. 319]; *State of Minnesota* v. *Tennyson,* 212 Minn. 158 [2 N.W.2d 833, 139 A.L.R. 987]; 1 C.J.S. 323.) For similar reasons the giver and receiver of a bribe (*People* v. *Davis,* 210 Cal. 540, 557 [293 P. 32]), and the perjurer and the suborner (*People* v. *Layman,* 117 Cal. App. 476, 479 [4 P.2d 244]; *People* v. *Nickell,* 22 Cal.App2d 117, 124 [70 P.2d 659]) are no longer accomplices under section 1111. (See, also, *In re Morton,* 179 Cal. 510, 513 [177 P. 453]; *People* v. *Burness,* 53 Cal.App.2d 214 [127 P.2d 623]; *People* v. *Gordon,* 41 Cal.App.2d 226 [106 P.2d 208]; *People* v. *Williams,* 7 Cal.App.2d 600 [46 P.2d 796].) Since section 275 of the Penal Code covers all acts committed by Thelma Huntley in connection with the abortion, she was subject to prosecution for an offense distinct from the crime of abortion for which the defendants were on trial and was therefore not an accomplice within the meaning of section 1111 of the Penal Code. (*People* v. *Wilson,* 54 Cal.App.2d 434, 447 [129 P.2d 149]; see, 139 A.L.R. 993).

The requirement of corroboration under section 1108 of

the Penal Code relates to the testimony of any woman on whom an abortion was performed, whether she voluntarily submitted to the operation or was induced to do so by force or fraud. The section is designed to protect the defendant against possible injustice where his statement and that of the woman conflict. (See, 7 Wigmore, Evidence [1940], § 2061, p. 346.) Since this section has no bearing on the question whether the woman is an accomplice, its requirement of corroborating testimony cannot be construed as excluding the testimony of an accomplice for the corroboration of the woman's testimony.

The judgments and order appealed from are affirmed.

Gibson, C. J., Shenk, J., Curtis, J., and Edmonds, J., concurred.

SCHAUER, J.—I dissent. I agree with the statement in the majority opinion that "The question whether a woman who submits to an illegal operation is an accomplice of the defendant on trial for the abortion must be determined according to the definition of an accomplice in section 1111 of the Penal Code as one 'who is liable to prosecution for the identical offense charged against the defendant on trial.'" But I submit that in any particular case the answer to that question must depend upon the facts of that case. The majority opinion declares also that "Under the statutory definition, the mere fact that the witness is punishable for his cooperation with the defendant in the illegal transaction does not make him an accomplice." In an academic sense this statement is true. But it is also true that, under the law of California as it has heretofore been generally understood and applied, if the cooperation of the witness made him liable to prosecution for the identical offense charged against the defendant then such witness was an accomplice and the fact that he might *also* be liable to prosecution for a separate offense arising out of the same acts did not abrogate his status as an accomplice. Certainly it should not be deemed to restore his character and integrity as a witness.

The majority opinion continues, "It is necessary to determine whether sections 31 and 971 of the Penal Code or other provisions of the criminal law subject the witness to prose-

cution under the provisions that the defendant is accused of violating, *or* whether the acts of the witness participating in the transaction constitute a separate and distinct offense." (Italics added.) This statement is to be noted for its use of the disjunctive "or." As I view the law the evidence here establishes that the witness under discussion was liable to prosecution under the provisions that the defendants are accused of violating *and* that her acts constituted a separate and distinct offense. The majority opinion, however, asserts the following propositions and conclusion: "If a statutory provision so defines a crime that the participation of two or more persons is necessary for its commission, but prescribes punishment for the acts of certain participants only, and another statutory provision prescribes punishment for the acts of participants not subject to the first provision, it is clear that the latter are criminally liable only under the specific provision relating to their participation in the criminal transaction. *The specific provision making the acts of participation in the transaction a separate offense supersedes the general provision in section 31 of the Penal Code that such acts subject the participant in the crime of the accused to prosecution for its commission.* [Citing Code Civ. Proc., § 1859, and civil cases.] Thus section 275 of the Penal Code prescribing punishment for a woman who submits to an illegal operation precludes the application of section 31 of the Penal Code under which she would be punishable as principal for the crime of abortion." (Italics added.)

I am unable to agree with either of the two last quoted propositions or the conclusion. As is hereinafter pointed out in more detail, section 275 of the Penal Code seems to be designed to cover explicitly certain situations which are not covered by section 274 rather than to excuse from guilt of violation of the last mentioned section one who by the clear language of sections 31 and 971 is guilty of violating it.

It does not clearly appear to me what implications are intended by the above quoted language "If a statutory provision so defines a crime that *the participation of two or more persons is necessary for its commission,*" etc. Certainly there is nothing in section 274 of the Penal Code upon which to base an assumption that "the [unlawful] participation of two or more persons is necessary" for the commission of acts violating it. One person acting independently just as

well as two or more acting in cooperation can violate that section. The victim may be wholly unaware that the purpose of a drug administered to, or an operation performed upon, her is to produce an abortion. Under such circumstances she would not be an accomplice but this would be true because the facts proved did not bring her within the provisions of section 31 of the Penal Code. The victim in such a case no more "participates" in the crime than does the victim of a murder, forcible rape, robbery, mayhem, or kidnaping.

Certainly it would be true that if the participation of a witness constituted *exclusively* a separate offense he would not be an accomplice of the defendant, but it seems equally obvious that if his participation were such as to make 'him liable to prosecution for *both* the defendant's offense *and* a separate offense he would irrefragably be an accomplice of the defendant insofar as his competency as a witness in the prosecution of the defendant is concerned. The mere fact that the law created an additional offense as to him, whether overlapping or not, for which he might or might not be prosecuted, would not change the legal character of his relationship to the defendant and the latter's crime.

The "principals" in a crime are defined in section 31 of the Penal Code: "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . *are principals* in any crime so committed." (Italics added.) In the same tenor section 971 of the Penal Code provides that "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission . . . shall hereafter be prosecuted, tried, and punished *as principals.* . . ." ( Italics added.) Furthermore, contemplating apparently just such a situation as that which appears in this case; viz., one in which the same act may violate more than one statute, the Legislature enacted section 654 of the Penal Code, protecting the offender against double punishment by the provision that "An act or omission which is made punishable in different ways by different provisions of this code *may be punished under either of such provisions,* but in no case can it be punished under more than one." (Italics added.)

Sections 1111 and 31 of the Penal Code, being parts of the same code dealing with related subject matter, must be read together. Section 1111 defines an accomplice "as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." Section 31 specifies the persons who are "liable to prosecution for the identical offense charged against the defendant." It specifically declares that "*All* persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crimes so committed." (Italics added.) It is difficult to conceive of clearer language than that used in section 31. Under its language no one but a principal "liable to prosecution for the identical offense charged against the defendant" can be an accomplice.

The object of the Legislature in this enactment was both to simplify criminal procedure and to abolish the technicalities of the common law which made the aider or abettor a principal in the second degree and which forbade bringing the accessory to trial until the principal had been convicted or outlawed. (See 2 Stephen, History of Criminal Law, 232.) At the same time the Legislature recognized that the "evidence of an accomplice, coming from a tainted source, the witness being, first, an infamous man, from his own confession of guilt, and, second, a man usually testifying in the hope of favor or the expectation of immunity, was not entitled to the same consideration as the evidence of a clean man" (*People* v. *Coffey* (1911), 161 Cal. 433, 438 [119 P. 901, 39 L.R.A. N.S. 704]) and declared the policy of the state that "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (Pen. Code, § 1111.) The definition of the word "accomplice" in section 1111 does not purport to repudiate the provisions of section 31 but is, rather, dependent upon that section for definite intelligibility. Section 31 was enacted in 1872 and the Legislature certainly must be presumed to have had the provisions of that section in mind

when it, in 1915, amended the related section, 1111, to define the word "accomplice," and used language which is made certain and definite in its application to the subject matter by reference to the earlier section.

There is a seeming suggestion in the majority opinion that it was because of some amendment in the law wrought by the language of the definition of accomplice in section 1111 that it was held in certain cases that a thief was not the accomplice of the receiver of his stolen property. I do not perceive that the language of the definition of accomplice as set forth in section 1111 of the Penal Code repeals or modifies in any way the provisions of section 31 of the same code. No authority has been called to my attention which disputes the proposition that "every person of legal responsibility, who knowingly and voluntarily co-operates with or aids or assists or advises or encourages another in the commission of a crime is an accomplice." (*People* v. *Coffey* (1911), *supra*, at pp. 439-440.) As long as sections 31 and 1111 remain, in their present form, as parts of the Penal Code, just so long do "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission," remain accomplices. They remain accomplices because by the effect of section 31 they are "liable to prosecution for the identical offense [properly] charged against" any of their number arising out of their joint undertaking.

The majority opinion cites certain cases concerned with bribery, perjury, and receiving stolen property as supporting the view promulgated. It would require unwarranted extent in this dissenting opinion to analyze each of those cases or even each of the types of crime mentioned. It is obvious that none of those cases constitutes actual authority for the propositions or conclusion enunciated by the majority here. In my opinion it is impractical to lay down a broad rule which may properly determine in every case, regardless of varying factual details, whether a woman is or is not the accomplice of a doctor who aborts her. Each case presents inherently a question of fact and should be governed not by a rule of thumb which the courts may declare but by the applicable provisions of the Penal Code under the facts of the particular case. The same rule should apply in all types of crime. For example we may take the crime of receiving stolen property.

Certainly it is true that a receiver of stolen property is not the accomplice of the thief in the commission of the theft if that theft has been completely committed before the receiver of the property is contacted by the thief. This is obviously true not because of any court-made rule of law to the effect that the receiver of stolen property cannot be an accomplice of the thief but because the receiver in such a case does not factually come within the definition of accomplice. He has not committed the theft directly nor has he aided, abetted, advised, or encouraged its commission. Hence, under sections 31 and 1111 he is not an accomplice. But I submit that if a person, in advance of the commission of a theft, were to wilfully advise and encourage another to commit it, agreeing to purchase and receive the specific property to be stolen, then such person so advising and encouraging the theft should be held guilty of the theft itself, as an accomplice, even though he might also, upon actual receipt of the property, be guilty of the separate offense of receiving stolen property. But the majority rule here, if followed, will exculpate him from guilt of theft. So also the thief may or may not, dependent upon the facts of each particular case, be an accomplice of the receiver of stolen property. Merely because he has stolen the property and sold it, he is not necessarily an accomplice of the receiver in violating section 496 of the Penal Code. That section makes a specific intent a part of the offense denounced. It declares that "Every person who *for his own gain, or to prevent the owner from again possessing his property,* buys or receives any personal property, knowing the same to have been stolen . . . is punishable," etc. (Italics added.) A thief, having the stolen property in his possession, normally is interested in only one thing; viz., to dispose of it for his own personal gain. The realization of gain for himself is the controlling motive for his every action. In selling the property to another his interest in the transaction ceases when it is sold, delivered, and paid for. He would ordinarily have no interest whatsoever in aiding or abetting the receiver to receive, hold, or handle the property for the *latter's* gain or to "prevent the owner from again possessing his property." Hence, there is a rational ground for holding that the thief would not, upon the facts, merely by reason of the sale of the stolen property to another, aid or abet the latter in his separate offense. Again, however, the question is inherently one of fact rather than of law.

So in this case it is primarily a question of fact whether the witness Thelma Huntley was an accomplice. If she did not know that an abortion was to be committed upon her, or, knowing it was proposed, did not wilfully cooperate in or encourage it, she would not be an accomplice. But if, with full knowledge, she aided, abetted, advised, or encouraged the defendants to violate section 274 of the Penal Code then she is an accomplice and, by the express terms of section 31, *a principal* in this case. The fact that she may also have violated section 275 of the same code does not absolve her from guilt for violation of section 274 nor can it alter the facts which constitute her an accomplice and principal therein. The sections do, to some extent, overlap but, as previously suggested, section 275 seems obviously intended to cover situations which are not covered by section 274, rather than, as held by the majority, to exculpate her from guilt as a principal for violation of section 274 when she deliberately aids, abets, and encourages another to participate in violating the section. Section 275 makes guilty of the offense there defined any "woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits . . . to the use of any means whatever, with the intent thereby to procure a miscarriage, unless the same is necessary to preserve her life." The solicitation or submission referred to in this section might take place with the essential guilty intent on the part of the woman but entirely without any guilty knowledge on the part of the person solicited. This, then, would constitute an offense entirely separate from that defined in section 274, but it obviously does not preclude the woman from aiding and abetting someone else in the violation of section 274.

Some of the mischief in the broad doctrine of the majority that "The specific provision making the acts of participation in the transaction a separate offense supersedes the general provision in section 31 of the Penal Code that such acts subject the participant in the crime of the accused to prosecution for its commission," may be shown by illustration. With that doctrine in mind let us consider some of the situations which may arise under section 653f of the Penal Code. That section provides that "Every person who solicits another to offer or accept or join in the offer or acceptance of a bribe, or to commit or join in the commission of murder, robbery, burglary, grand theft, receiving stolen property, extortion, rape by force and violence, perjury, subornation of perjury, forgery,

or kidnaping, is punishable by imprisonment in the county jail not longer than one year or in the state prison not longer than five years, or by fine of not more than five thousand dollars.'' The advantage to the leader of an organized gang of criminals is obvious. If he personally remained aloof from direct and personal participation in the crimes he solicited his men to commit his liability to prosecution under section 653f would, in the language of the majority, ''preclude the application of section 31 of the Penal Code'' under which, as the law has heretofore been understood, he would have been liable as a principal for the crime actually committed, and he would instead be subject only to the relatively light punishment prescribed by section 653f. That advantage to him could be substantial not only as to major crimes of violence but even as to the relatively minor offense of receiving stolen property. That offense (Pen. Code, § 496bb) is declared to be a felony and is punishable by imprisonment in the state prison not exceeding five years (Pen. Code, § 18). But under section 653f he might be only fined or given a county jail sentence.

The Legislature in this state has declared the policy that accomplices must be corroborated if a conviction on their testimony is to be sustained. That requirement reflects the wisdom of lawmakers based on the experiences of mankind over the centuries during which penal laws have been enacted and administered. As stated in *People* v. *Coffey* (1911), *supra,* 161 Cal. 433, 438, ''Time has not changed the value of such evidence.'' If exemptions in such laws (as to the corroboration of accomplices) are to be created, they should come from the Legislature and not be innovated by the courts. This court should be ever vigilant to protect, rather than to whittle away, the safeguards which the people through the Legislature have thrown around their liberty. However righteous the zeal to punish the guilty, the result of a salutary law struck down may well be more unrighteous than for two (or any number of) guilty individuals to escape punishment for a particular offense.

Upon the evidence in this case it seems certain that if the defendants are guilty of the offense charged, then so also is the witness Thelma Huntley guilty of such offense.

The trial court erred in failing to properly instruct the jury as to the necessity for corroboration of the witness and the judgments and order appealed from should be reversed.

Carter, J., concurred.